EMPLOYMENT SECURITY COMMISSION *v.*
CHRYSLER CORPORATION.

1. UNEMPLOYMENT COMPENSATION—CHANGE OF EMPLOYERS—REIN-
STATEMENT OF CREDIT WEEKS.

 Credit weeks, earned with previous employer and cancelled upon
voluntary leaving without good cause attributable to previous
employer to accept full-time work with present employer,
should be reinstated and added to those earned with present
employer only in sufficient number to give employee same
number of credit weeks as he would have earned had he
remained with previous employer until layoff (CLS 1961,
§ 421.29).

2. SAME—BENEFIT YEAR—NEW EMPLOYER.

 The employment security act enables a claimant, who has left
former employer to accept work with later employer during
benefit year established in former employment, to establish
new benefit year as soon as sufficient new wage credits have
been earned in later employment (CLS 1961, §§ 421.29,
421.46).

3. SAME—BENEFITS—CHANGE OF EMPLOYER—RATING ACCOUNT
CHARGED.

 Unemployment benefit rating account of employer laying off
beneficiary must first be charged for benefits paid and ex-
hausted before benefits are charged to reinstated credit weeks
earned with prior employer (CLS 1961, § 421.29).

4. COSTS—PUBLIC QUESTION—CONSTRUCTION OF STATUTE.

 No costs are allowed on appeal in proceeding to determine whether
credit weeks, earned with preceding employer and cancelled
when employee left to work for another employer, should be

---

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 48 Am Jur, Social Security, Unemployment Insurance and
Retirement Funds § 34.
[4] 5 Am Jur 2d, Appeal and Error § 1009.

reinstated when employee was laid off by the later employer before having established sufficient new wage credits to establish a new benefit year, a matter of public interest being involved (CLS 1961, §§ 421.29, 421.46).

Appeal from Oakland; Adams (Clark J.), J. Submitted Division 2 January 4, 1966, at Lansing. (Docket No. 65.) Decided July 12, 1966.

Francis A. Finnigan filed a claim for unemployment benefits upon layoff by General Motors Corporation. The Employment Security Commission determined that his benefits were first chargeable to the experience rating account of a previous employer, Chrysler Corporation. A referee of the Commission decided that benefits were first chargeable to General Motors Corporation until credit weeks earned there were exhausted, and then were chargeable to Chrysler Corporation. The Commission appealed to the Appeal Board of the Employment Security Commission, which affirmed the referee's decision. The Commission then appealed to the circuit court, which affirmed the Appeal Board. The Commission appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Arthur W. Brown,* Assistant Attorney General, for the appellant Employment Security Commission.

*G. Lee Philp,* for appellee Chrysler Corporation.

BURNS, J. Francis A. Finnigan, the claimant in this case, was employed by the Chrysler corporation on May 18, 1958. On May 29, 1960, he was laid off by Chrysler, whereupon he filed for unemployment compensation under the pertinent provisions of the Michigan employment security act. The filing of

this claim established for Finnigan a base period running from May 24, 1959 to May 21, 1960, and a benefit year running from May 22, 1960 to May 20, 1961. As Finnigan had earned the maximum of 39 credit weeks with Chrysler during his base period he was eligible at this point to draw up to 26 weekly benefits chargeable against Chrysler's experience rating account under the act. However, Finnigan was recalled to work at Chrysler after having drawn only 4-1/2 weekly benefits for which 6 weeks in his base period had been cancelled.

Following this recall Finnigan again worked for Chrysler for 11 weeks until August 31, 1960, when he voluntarily left Chrysler to accept employment with the Pontiac Motor Division of General Motors Corporation. He worked at General Motors continuously from September 1, 1960 until February 28, 1961, at which time, after having earned 27 credit weeks with General Motors, he was laid off for lack of work.

On March 2, 1961, he renewed his claim for unemployment benefits, and on May 2, 1961, he was called back to work by General Motors.

It should be pointed out that the specific rights of the claimant, Francis A. Finnigan, are not the issue of this case. Mr. Finnigan was entitled to, and did receive, benefits during the period of his lay-off from February 28, 1961, through May 2, 1961. The only dollar issue in the case is between Chrysler and General Motors and it relates only to which corporation's rating account Mr. Finnigan's benefits should first be charged.

It is the appellees' claim, and so the trial court found, that Finnigan, pursuant to section 29, subd (1)(a) of the Michigan employment security act,[1] should have reinstated only enough of his Chrysler

---

[1] CLS 1961, § 421.29 (Stat Ann 1960 Rev § 17.531).

credit weeks so that when added to his General Motors credit weeks they would provide him with the same number of weeks of benefit as would have been available to him had he continued to work for Chrysler and been laid off by Chrysler on the same date he was laid off by General Motors.

It is the commission's contention that Finnigan did not commence a new benefit year when he applied for benefits after his lay-off by General Motors on February 28, 1961, but rather that his benefit year established while employed by Chrysler continued to May 20, 1961, and that he would then have been in a position to commence a new benefit year had he continued to be laid off beyond that date.

Following various stages of administrative and judicial appeal, the appellant seeks review in this Court from a circuit court order affirming the decision of the appeal board in reversing the commission determination.

Section 29 subd (1)(a) of the Michigan employment security act states:

"Provided * * * that if an individual leaves his work voluntarily without good cause attributable to the employer [Chrysler] for the purpose of accepting permanent full-time work with another employer [General Motors], and if, during the 39 weeks following his separation [from Chrysler] he is laid off for lack of work by his new employer [General Motors], enough of his credit weeks with his separating employer whom he left voluntarily [Chrysler] shall be reinstated so that the total number of weeks of benefits available to him from all employers [Chrysler and General Motors] at the time of such layoff will not be less if he had been laid off by the said separating employer [Chrysler]."

Section 46 of the act provides:

"If all, or the then remaining part, of a claimant's rights to benefits during his benefit year are can-

celled under the provisions of section 29(1)(a), the remaining portion of such benefit year shall also be cancelled."[2]

The appellant contends that the 2 statutory provisions are in conflict, specifically that section 29 requires the reinstatement of the 12 remaining weeks of benefits available to the claimant during his current benefit year, and it therefore also requires the retention of the current benefit year. Appellant further contends that section 46 requires the cancellation of the current benefit year.

We must affirm the opinion of the trial judge. The interpretation of section 29 of the Michigan employment security act is quite clear, that is, that it allows the claimant to add credit weeks from the separating employer whom he leaves voluntarily to the credit weeks earned from his subsequent employer so that the number of benefit weeks "will not be less if he had been laid off by the said separating employer [Chrysler]." Any other interpretation that is given it by the appeal board and the circuit court would be contrary to the very obvious purpose of the statute. Any other interpretation should be sought through legislative action.

Section 46 of the act enables the claimant to establish a new benefit year as soon as sufficient new wage credits have been earned in later employment.

The determination of the appeal board and the circuit court is affirmed. As this involves the interpretation and application of statutory provisions of public interest, there shall be no costs.

- T. G. KAVANAGH, P. J., and McGREGOR, J., concurred.

---

[2] CLS 1961, § 421.46 (Stat Ann 1960 Rev § 17.550).—REPORTER.